UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Eric Steffen,

Case No. 20-cv-1050 (WMW/JFD)

Plaintiff,

v.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

St. Paul Eye Clinic, P.A.,

Defendant.

---

This matter is before the Court on Defendant St. Paul Eye Clinic, P.A.'s, motion for summary judgment, (Dkt. 74), on Plaintiff Eric Steffen's eight employment-civil-rights claims. For the reasons addressed below, the Court grants the motion.

## BACKGROUND

Plaintiff Eric Steffen is a citizen and resident of Hanover, New Hampshire. Defendant St. Paul Eye Clinic, P.A. (SPEC), is a Minnesota corporation that operates eyecare clinics in several counties throughout the state.

**I.      St. Paul Eye Clinic, P.A., hires Steffen in 2004, and Steffen becomes a shareholder in 2008.**

In 2004, SPEC hired Steffen as an ophthalmologist and glaucoma specialist. While at SPEC, Steffen was the only surgical glaucoma specialist on staff. Steffen treated glaucoma patients who required specialized care as well as general ophthalmology patients.

In 2008, Steffen became a SPEC shareholder by purchasing SPEC shares and signing a new employment agreement (Agreement).  Steffen's Agreement with SPEC, and those of the other shareholders, gave each shareholder a position and equal vote on SPEC's Board of Directors (Board).  Steffen's agreement prevented SPEC from terminating Steffen's position absent a vote of 80% of the Board.  The Agreement also states that Steffen was eligible for fringe benefits available to "owner employees."

While working at SPEC as a physician-shareholder, Steffen received compensation according to the following formula: an individual portion of SPEC's profits equal to the portions of the other shareholders, and 80% of SPEC's net-income as adjusted by Steffen's own production.  Steffen also owned shares in and received profit-based earnings from three corporations related to SPEC: St. Paul Opticians, Eye Surgery & Associates and Northway Resource Development Company.

## II. Steffen injures his back in 2017 and takes medical leave.

In March 2017, Steffen injured his back while skiing.  Steffen attempted non-invasive therapy and took a medical leave of absence from SPEC during summer 2017. Steffen subsequently decided to undergo back surgery in October 2017.  Approximately three weeks post-surgery, Steffen returned to work.  The first surgery did not succeed, however, and Steffen's back pain recurred.  Steffen requested accommodations from SPEC to assist him as he dealt with his recurring back pain.  In October, November and December 2017, these accommodations primarily included requests to reduce Steffen's patient schedule.  SPEC schedulers cancelled and rescheduled many of Steffen's patients and attempted to prioritize patient needs and conditions while doing so.

In mid-December 2017, Steffen underwent a second surgery and began a second medical leave scheduled to end after February 20, 2018. While on medical leave in January 2018, Steffen received an email from a medical recruiter for another organization. On February 5, 2018, Steffen replied to the recruiter, and later in the day, spoke to the head of the ophthalmology department. Three days later, Steffen advised SPEC that he needed to extend his medical leave to March 2018. Steffen attended a recruiting trip from February 25, 2018, to February 27, 2018.

On February 23, 2018, Steffen began preparing for his post-leave return to SPEC. Specifically, Steffen emailed SPEC a list of five accommodation requests for his return that includes: (1) a limit of 15–16 patients per morning- or afternoon-clinic session; a morning start-time of no earlier than 9:00 A.M.; (3) a CX/EX[1]-appointment ratio of 60:40; (4) a specially-assigned technician; and (5) ergonomic chairs. SPEC responded to Steffen's requests on March 2, 2018, with a letter detailing its plan to accommodate Steffen's requests.

### III.    Steffen returns to SPEC in March 2018.

Steffen returned to work on March 5, 2018. Approximately two weeks later, Steffen expressed dissatisfaction with SPEC's efforts to provide the requested accommodations and emailed David Rothschiller, SPEC's Chief Executive Officer, and three managers. Rothschiller responded on behalf of SPEC, indicating an immediate

---

[1]    At SPEC, physicians perform complete examinations (CX) and intermediate/follow-up examinations (EX). SPEC and its physicians bill different rates for each type of examination. CX appointments typically produce more revenue for physicians and for SPEC than EX appointments.

willingness to fix certain issues, such as missing ergonomic chairs, and initiated a discussion with Steffen about other issues such as SPEC's belief that Steffen's requested CX/EX appointment ratio was not in the best interest of patients.

Steffen continued to express dissatisfaction with SPEC's response to his requested accommodations through the first month of his post-leave return to work. Steffen believed that none of his fellow partners had expressed concern for his well-being while on leave, and that his partners began ostracizing Steffen when he returned to work.

### IV.    Steffen resigns from SPEC in April 2018.

Steffen traveled from March 22, 2018, through March 26, 2018, for a second recruiting visit organized by the medical recruiter. During this trip, the organization made Steffen an oral job offer, which was subsequently confirmed in writing. On or about April 11, Steffen submitted his resignation to SPEC and accepted the offer. Following his departure from SPEC, Steffen and SPEC engaged in litigation pertaining to the balance of Steffen's shareholder draw and SPEC's buyback. The Washington County District Court, Tenth Judicial District, determined that Steffen owed SPEC $40,249.00 in overdrawn partnership funds at the time of his departure.

In April 2020, Steffen commenced this matter against SPEC, alleging seven employment-discrimination claims and one breach-of-contract claim. Steffen's employment claims arise under the Minnesota Human Rights Act (MHRA), the Americans with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA).

## ANALYSIS

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" within the meaning of Rule 56, Fed. R. Civ. P., if its proof or disproof might affect the outcome of the suit under the substantive governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  When deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party.  *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014).

When asserting that a fact is genuinely disputed, the nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of that assertion.  *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A).  A nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted).  "The existence of a 'scintilla of evidence' in favor of the non-moving party is not enough to create a genuine issue of material fact."  *Devine v. Stone, Leyton & Gershman, P.C.*, 100 F.3d 78, 81–82 (8th Cir. 1996) (quoting *Anderson*, 477 U.S. at 252).

## I.      Steffen's Statutory Claims Under MHRA, ADA and FMLA

SPEC contends that Steffen cannot establish a prima facie case of disability discrimination, retaliation or failure-to-accommodate because Steffen is not an employee within the meaning of MHRA, ADA or FMLA.  Steffen disagrees, arguing that he is an employee within the meaning of these statutes.  Because Steffen's claims and SPEC's arguments turn on the definition of "employee," the Court must analyze whether any genuine dispute of material fact exists as to Steffen's status as an "employee" of SPEC within the meanings of the MHRA, ADA and FMLA before turning to the operative *McDonnell Douglas* burden-shifting framework.

### A.      Statutory Definitions of Employee

The MHRA defines "employee" as "an individual who is employed by an employer and who resides or works in this state."  Minn. Stat. § 363A.03, subdiv. 15 (defining "employee" under MHRA); *cf.* 42 U.S.C. § 12111(4) (defining "employee" under ADA as "an individual employed by an employer"); 29 U.S.C. § 2611(2)(B)(ii) (referencing Fair Labor Standards Act definition of employee—"any individual employed by an employer").  The MHRA, ADA and FMLA "do not apply to non-employees." *Hanson v. Friends of Minn. Sinfonia*, 181 F. Supp. 2d 1003, 1006 (D. Minn. 2002); *Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 763–64 (8th Cir. 2014).  "To determine whether an employment relationship exists," courts examine "the economic realities underlying the work relationship to decide whether the worker is likely to be susceptible to the discriminatory practices [the MHRA, ADA and FMLA were] designed

to eliminate." *Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 76 (Minn. 2020) (citing *Wilde v. Cnty. of Kandiyohi*, 15 F.3d 103, 105 (8th Cir. 1994)).

### B. *Clackamas* Factors

At issue here is whether an individual worker who is also a shareholder of the organization for which the individual works is an "employee" within the meaning of the MHRA, ADA and FMLA. The Supreme Court of the United States has established a six-factor inquiry for determining whether a physician-shareholder who owns and sits on the board of the professional corporation for which the physician-shareholder works is an employee. *Clackamas Gastro. Assocs., P.C. v. Wells*, 538 U.S. 440 (2003), concludes that whether physician-shareholders who owned and sat on the board of the professional corporation for which they worked were "employees" is a question that should be evaluated under a six-factor inquiry. *See Clackamas Gastro. Assocs., P.C. v. Wells*, 538 U.S. 440, 449–450 (2003); *see also von Kaenel v. Armstrong Teasdale, LLP*, 943 F.3d 1139, 1143–44 (8th Cir. 2019) (applying *Clackamas* factors). These factors include:

1. Whether an organization can hire or fire an individual or set the rules and regulations of an individual's work;

2. Whether and to what extent an organization supervises an individual's work;

3. Whether an individual reports to someone higher in an organization;

4. Whether and, if so, to what extent an individual is able to influence an organization;

5. Whether the parties intended that an individual be an employee, as expressed in written agreements or contracts; and

7

6.   Whether an individual shares in an organization's profits, losses, and liabilities.

*See Clackamas*, 538 U.S. at 449–450 (internal quotation marks omitted).   In deciding whether shareholder-workers are employees, courts look to "the extent to which [the shareholder-workers] manage and own the business," *Devine*, 100 F.3d at 81, by distinguishing between "individuals whose title or ownership in the business comes without meaningful authority to run the business from those whose office or stake in the company is genuine," *Smith v. Castaways Fam. Diner*, 453 F.3d 971, 978 (7th Cir. 2006); *cf. Simpson v. Ernst & Young*, 100 F.3d 436, 441–42 (6th Cir. 1996) (affirming that shareholder did not meet definition of "employee" because a management committee exercised exclusive control over relevant employer functions).

The parties dispute whether there are genuine issues of material fact in the record that preclude summary judgment.   Although multifactor balancing tests such as the test set forth by *Clackamas* are fact-intensive, employment status is a question of law that courts decide on summary judgment in the absence of disputed material facts as to the nature and weight of individual factors.   *See Alexander*, 768 F.3d at 761–62.

### 1.   Could SPEC hire or fire Steffen or set the rules and regulations of Steffen's work?

SPEC contends that undisputed facts establish that Steffen could not simply be hired or fired by SPEC.   Steffen obtained his role as a physician-shareholder in part by making a capital contribution, and Steffen's shareholder status prevented his termination absent a vote by 80% or more of the shareholders, SPEC argues.   Steffen contends that "SPEC could terminate Steffen, with or without cause, and set rules regarding his work,

including dictating that [Steffen] would no longer perform certain surgical procedures." But Steffen's argument fails to identify specific facts that support the assertion that SPEC could hire and Steffen, or set the rules and regulations of Steffen's work, despite having the burden to do so when opposing summary judgment. *Gander Mountain*, 540 F.3d at 832. An independent review of the record demonstrates several undisputed facts material to the first *Clackamas* factor, however.

First, Steffen obtained his physician-shareholder position with SPEC through a hiring process that differs from the process used when Steffen secured his position at SPEC as a non-shareholding physician. Specifically, SPEC hired Steffen in 2004 as a physician. Steffen became a physician-shareholder in 2008 only after SPEC invited him to purchase a portion of its shares and Steffen accepted when he paid for those shares. As Steffen testified, not all SPEC physicians are shareholders. "One of the differences between being a physician and being a physician-shareholder is that . . . a shareholder had the right and did serve as a member of the board of directors." The record establishes that it was Steffen's capital contribution, not a hiring decision by SPEC, that resulted in Steffen's role as a physician-shareholder. *Cf. Lemmon v. Rocky Mountain Anesthesiology, P.C.*, No. 1:19-cv-00078-DAO, 2020 WL 5016903, at *7 (D. Utah, Aug. 25, 2020).

Second, the record contains undisputed evidence that SPEC could terminate Steffen only upon a vote of 80% or more of the Board. These undisputed facts distinguish SPEC's hiring process for Steffen from that used to employ others who worked for SPEC. Although both parties agree that SPEC retained the ability to fire Steffen, the parties also agree that SPEC "would have faced much steeper hurdles in

doing so than applied in terminating a non-shareholder physician." *Cronkhite v. Unity Physician Grp.*, No. 1:05-cv-1577-SEB-JMS, 2007 WL 1035091, at *7 (S.D. Ind. Mar. 30, 2007). Steffen did not work as a traditional employee, instead, he "benefitted from heightened job-security that non-shareholder physicians did not." *Id.*

Third, SPEC did not have absolute authority to set the rules and regulations governing Steffen's work without input from Steffen. As to this aspect of the first *Clackamas* factor, Steffen argues that SPEC dictated his surgery and patient-appointment schedules. But Steffen identifies nothing in the record to support this assertion. Indeed, undisputed facts in the record indicates that Steffen's peers on the Board influenced important aspects of physician work, such as patient scheduling, and that Steffen consulted with the schedulers when he wanted to modify his patient schedule.

Steffen asserts that he worked at the whim of SPEC's governing committees, thereby lacking the ability to control the rules and regulations of his workplace. These governing committees set overarching policies that impacted the day-to-day performance of work. Describing the organizational structure, Steffen asserts that the Chief Medical Officer (CMO) of SPEC "leads the Professional Standards Committee, is the primary interface with other providers and "serves as the lead for clinical care policies." The CMO derives authority from the Board. And the Professional Standards Committee "was an offshoot [of] and reported to the board." And through the work of these committees, Steffen argues, SPEC set certain rules and regulations pertaining to his work.

Steffen was a member of the Board, however. Any policy suggested by the Professional Standards Committee was submitted to the Board for final approval before

implementation.   The Board hires professional staff, physicians and any member of SPEC's executive suite; convenes SPEC's governing committees and receives direct reports from the executive suite.   Steffen does not dispute any of these facts.   As such, undisputed facts in the record demonstrate that Steffen influenced the committees' work and existence through his status as a Board member, thereby retaining a "right of control" over these committees. *Bluestein v. Cent. Wisc. Anesthesiology, S.C.*, 769 F.3d 944, 956 (7th Cir. 2014) (applying *Clackamas* factors and affirming summary judgment that physician-shareholder was not an "employee" even though physician-shareholder often landed in the "minority position among [] fellow physician-shareholders," because physician-shareholder retained a "right of control" by virtue of shareholder status).

Steffen responds that he lacked the ability to control the rules and regulations of his workplace as the Board or SPEC's committees often voted against his preferred course of action or otherwise declined to implement the policies he desired.   A party who seeks to establish a dispute of material fact may not merely rely on self-serving allegations. *See Segal v. Metro. Council*, 29 F.4th 399, 403 (8th Cir. 2022).   Instead, that party must substantiate any allegations with sufficient probative evidence.   *See id.* Steffen's opinion that other shareholders exerted more influence and control than he did does not create a genuine dispute of material fact as to whether SPEC controlled the rules and regulations of his work.   Rather than disputing the truth or falsity of a particular fact based on the record, Steffen simply offers arguments about the legal significance of the facts relevant to the control factor.   These arguments fail to satisfy Steffen's burden as the

party opposing summary judgment. Moreover, these arguments contradict the balance of law on the control factor.

Specifically, courts recognize that in the "upper echelon" of equity-shareholder arrangements, "some [shareholders] exert greater influence than others. Some form controlling factions. Others, despite their best efforts, are more often in the minority. . . . These are the inescapable realities whenever people assemble in groups or elect to form organizations." *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 398 (4th Cir. 2021). Although committee rules and regulations governed Steffen's work at SPEC, Steffen has not identified anything in the record that barred him from influencing the promulgation of SPEC's rules and regulations. Therefore, Steffen retained control—sometimes direct, sometimes indirect—over the rules and regulations of his work.

The undisputed facts relevant to the first *Clackamas* factor, therefore, favor the finding that Steffen was not an employee of SPEC under the MHRA, ADA or FMLA.

### 2.   Could SPEC, and if so to what extent, supervise Steffen's work?

SPEC argues that Steffen's "substantive work was not supervised." Steffen concedes that "he did not have a specific supervisor." But Steffen argues that SPEC subjected him to the "supervision and whims of the Executive Committee and the Professional Standards Committee." In response, SPEC contends that "Steffen exercised a high degree of independence in his medical practice" and that Steffen's complaints about his lack of control over his workplace are merely complaints about his inability to

control his partners. Again, Steffen fails to "designate specific facts" in the record to support his arguments. *Gander Mountain*, 540 F.3d at 832.

The record reveals no dispute about the fact that no single person supervised Steffen. Moreover, the record reflects the parties' shared understanding of the various ways in which Steffen enjoyed autonomy over his medical work and practice. For example, when asked about his post-leave negotiations with certain clinic staff members regarding patient schedules, Steffen testified that he was their boss. Dr. Uttley, another shareholder-physician, testified that Steffen "was in control of the number of patients that he was seeing." And Rothschiller, SPEC's CEO, testified that even as the CEO of SPEC he would not "judge [Steffen's] clinical performance" because he is not a clinician. Other parts of the record indicate that SPEC's committees could not control Steffen's professional work. Dr. Quick, in her role as CMO, testified that she did not have personal oversight over other ophthalmologists' competency or clinical care. Rather, Dr. Quick and the Professional Standards Committee dealt with operational and quality assurance aspects of SPEC's medical practice. Steffen's argument relies mainly on the proposition that he lacked influence over SPEC's committees and that he therefore lacked control over his work, despite his authority as a Board member to oversee the committees. This argument, however, pertains to Steffen's disagreement with the law's application to this factor, the facts of which neither party disputes.

The realities of multi-shareholder governance notwithstanding, "inevitable differences in personal influence do not negate a [shareholder's] basic standing in the [practice]." *Lemon*, 985 F.3d at 398. Indeed, SPEC's governing committees "don't

actually have the authority to do anything . . . their job is to educate themselves and then present a recommendation and the board does the voting." The undisputed facts establish that Steffen controlled his own work.

Therefore, the undisputed facts relevant to the second *Clackamas* factor support the finding that Steffen was not an employee of SPEC under the MHRA, ADA or FMLA.

### 3.     Did Steffen report to someone higher in SPEC?

The parties' arguments regarding the third *Clackamas* factor do not differ substantially from their arguments regarding the second factor. SPEC asserts, and Steffen does not contest, that no one supervised Steffen. Steffen testified that he managed, supervised or otherwise served as the "boss" of other individuals at SPEC. As the non-moving party, Steffen has not met his burden to "demonstrate on the record the existence of specific facts which create a genuine issue" as to this factor. *Krenik*, 47 F.3d at 957.

The undisputed facts relevant to the third *Clackamas* factor, therefore, favor the finding that Steffen was not an employee of SPEC under the MHRA, ADA or FMLA.

### 4.     Could Steffen, and if so to what extent, influence SPEC?

SPEC asserts that Steffen influenced SPEC's Board, could access confidential shareholder documents and exercised "as much control over the rules and regulations, and as much ability to influence [SPEC], as any other shareholder." Steffen contends that he had little functional influence over SPEC. SPEC responds that Steffen's complaints about his lack of control over SPEC are merely complaints about his lack of control over his peer shareholder-physicians.

14

It is undisputed that Steffen possessed the power of an equal vote on the Board, which controlled SPEC's committees.  Moreover, Steffen's testimony establishes that he was knowledgeable of and exercised various forms of shareholder power during his tenure at SPEC.  Steffen understood that his role as a shareholder encompassed not only the ability to vote, but also the ability to voice opinions at board meetings and gain knowledge about SPEC's operations.  As a shareholder, Steffen also "expected . . . [to] have some say in hiring" an additional glaucoma specialist based on his understanding that he was entitled to an "equal say in the hiring of any physician" at SPEC.  The record also demonstrates that Rothschiller invited Steffen to participate in a recruitment committee and shared SPEC governance documents with Steffen.  In addition, Steffen testified to multiple instances in which he participated in the governance of SPEC, including suggesting new rules for the terms of company presidents and voting on specific leadership appointments.

While Steffen contends that he lacked any functional control over the decisions of SPEC's committees, the relevant undisputed facts in the record establish that Steffen's contention is just that—a contention.  The Court need not credit such arguments or allegations on summary judgment without sufficient underlying factual support.  *See Krenik*, 47 F.3d at 957.  Rather than demonstrating that Steffen experienced any sort of constructive exclusion, the record indicates that Steffen's difficulties stemmed from Steffen's own conduct and interpersonal disagreements with his colleagues, not a formal lack of control over his workplace.

For this reason, Steffen's arguments fail.  The personal differences and conflicts Steffen may have experienced with his colleagues do not negate his "basic standing" in SPEC as a voting shareholder and Board member.  *Lemon*, 985 F.3d at 398; *see also von Kaenel*, 943 F.3d at 1144 (identifying partner's voting rights as part of the "actual circumstances" of partner's non-employee status under *Clackamas*).  Steffen's status as a shareholder-physician at SPEC "was not simply a title that carried no legal significance." *von Kaenel*, 943 F.3d at 1144.  Rather, Steffen possessed the right to influence SPEC through this shareholder-physician status, and to do so with relative heft given the small number of other shareholders with whom he worked.  *See Simpson*, 100 F.3d at 445–46 (Daughtrey, J., concurring) (distinguishing meaningful shareholder status in small, closely-held partnerships and nominal shareholder status in large, global organizations).

The undisputed facts relevant to the fourth *Clackamas* factor, therefore, favor the finding that Steffen was not an employee of SPEC under the MHRA, ADA or FMLA.

### 5.    Did Steffen and SPEC intend that Steffen be an employee, as expressed in written agreements and contracts?

The parties agree that Steffen was a shareholder-physician during all relevant times at SPEC.  The Agreement defines "Shareholder-Physician" as a "medical doctor employed by [SPEC] who is also a[] [SPEC] shareholder."  SPEC highlights the fact that the Agreement refers to Steffen as an "owner" in some places, while Steffen focuses on the Agreement's frequent use of the word "employee."

The fact of an individual's title, without more, does not determine whether that individual is an employee.  *Clackamas*, 538 U.S. at 449–50.  Rather, "whether a

shareholder-director is an employee depends on 'all of the incidents of the relationship . . . with no one factor being decisive.' "  *Id*. at 451 (internal quotation marks omitted).

In his attempt to identify a genuine dispute of material fact as to this factor, Steffen relies solely on his assertion that the parties' Agreement "re-affirmed his continued status as an employee" and "unambiguously memorializes the parties' intent for Steffen to continue to be an employee."  Steffen's references to the record on this point are limited and do not clarify whether Steffen relies on the Agreement's full title (Employment Agreement), its use of the term "employee," or both.  Even assuming Steffen meant to reference both facets of the Agreement, the "mere existence of a document styled 'employment agreement' [cannot] lead inexorably to the conclusion that [Steffen] is an employee."  *Clackamas*, 538 U.S. at 450.  Without more, any dispute of fact that Steffen has created by referencing the Agreement does not qualify as "material" within the meaning of Rule 56(a), Fed. R. Civ. P.  *Anderson*, 477 U.S. at 252.

When viewed in the light most favorable to Steffen, the facts relevant to the fifth *Clackamas* factor neither favor nor disfavor the finding that Steffen was an employee of SPEC under the MHRA, ADA or FMLA.

6.    **Did Steffen share in the profits, losses and liabilities of SPEC?**

The parties agree that Steffen was a shareholder-physician at SPEC during all relevant times, and that, in addition to W-2 income that Steffen earned for patient billing, Steffen received K-1 shareholder dividends as a result of his shareholder status. Steffen's status as a shareholder and part-owner of SPEC entitled him to share in SPEC's profits, and consequently, SPEC's losses and liabilities. Steffen argues that the sixth *Clackamas* factor should be construed in his favor because the majority of his income stemmed from W-2 earnings and not K-1 dividends.

Beyond the fact that Steffen earned W-2 income as well as K-1 dividends, the record establishes very little about the relative composition of Steffen's earnings and losses. Although Steffen raises the issue of his wage-to-profit income ratio, he does not dispute the fact that he indeed received profit-based income. Because Steffen has not identified any aspect of the record that contradicts the fact that he received at least some profit-based income from SPEC, Steffen fails to demonstrate any genuine dispute of fact as to this factor.

The undisputed facts relevant to the sixth *Clackamas* factor, therefore, favor the finding that Steffen was not an employee of SPEC under the MHRA, ADA or FMLA.

In summary, under the foregoing *Clackamas* analysis, the undisputed facts in the record establish that at least five of the six *Clackamas* factors favor treating Steffen as a non-employee under the MHRA, ADA and FMLA. Even if the fifth factor tilts in Steffen's favor, *see Windstream*, 757 F.3d at 802–03, *Clackamas* ultimately requires the

Court to "peer beneath [Steffen's] title and probe the actual circumstances of [Steffen's] relationship with [SPEC]," *von Kaenel*, 943 F.3d at 1144. Here, the record includes a sufficient number of undisputed, material facts for the Court to do so and to conclude that no reasonable jury could return a verdict for Steffen on the employee-status issue. *See Anderson*, 477 U.S. at 248; *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3rd Cir. 2015) ("When a legal standard requires the balancing of multiple factors . . . summary judgment may still be appropriate even if not all of the factors favor one party, so long as the evidence so favors the movant that no reasonable juror could render a verdict against [the movant]." (internal quotation marks omitted)).

Steffen owned shares of SPEC and possessed the power to vote and otherwise control SPEC's Board, the entity that handled hiring and firing, rules and regulations and all other aspects of employment at SPEC. Steffen undoubtedly clashed with his colleagues during his final years at SPEC. But those interpersonal conflicts do not change his legal status with respect to SPEC. To find that Steffen is an employee of SPEC within the meaning of the statutes at issue would "contradict the image of control and agency that the Supreme Court handed down in *Clackamas*." *Lemon*, 985 F.3d at 398. Moreover, the paucity of specific record citations in his briefing demonstrates that Steffen has not carried his burden to create or identify disputes of material fact that warrants the denial of SPEC's motion for summary judgment on the employee-issue. *See* Fed. R. Civ. P. 56(a); *Krenik*, 47 F.3d at 957. For these reasons, the Court concludes that Steffen is not an employee of SPEC within the meaning of the MHRA, ADA or FMLA.

Because Steffen is not an employee within the MHRA, ADA or FMLA, Steffen's employment-discrimination claims under each of these statutes fail as a matter of law. *See Hanson*, 181 F. Supp. 2d at 1006; *Alexander*, 78 F.3d at 763–64. Accordingly, the Court grants SPEC's motion for summary judgment as to Counts I–VII.

## II.   Steffen's Breach-of-Contract Claim

A district court may decline to exercise supplemental jurisdiction over a plaintiff's state-law claims if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  A district court's decision to exercise supplemental jurisdiction is "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). When determining whether to exercise jurisdiction over pendent state law claims, a federal district court considers judicial economy, convenience, fairness, and comity. *See Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Although a federal district court may continue to exercise supplemental jurisdiction, it should "exercise judicial restraint and avoid state law issues wherever possible." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990).  When the "resolution of the remaining claims depends solely on a determination of state law," it is appropriate for a federal district court to decline to exercise supplemental jurisdiction over such claims.  *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (internal quotation marks omitted); *Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will

point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))).

Steffen's breach-of-contract claim concerns the financial logistics of his departure from SPEC.  Steffen alleges that SPEC failed to fully compensate him for his final days of work and vacation pay-out.  SPEC responds that Steffen was so far overdrawn that Steffen owed SPEC money even after accounting for any alleged compensation omissions.   Both parties litigated certain issues related to Steffen's shareholder compensation in a separate matter venued in the Washington County District Court, Tenth Judicial District.  Accordingly, Steffen's sole remaining claim "depends solely on a determination of state law."  *Glorvigen*, 581 F.3d at 749.  And because the sole remaining claim concerns issues between the parties with which the Minnesota state court has already engaged, considerations of judicial economy and comity support declining to exercise jurisdiction over the remaining state-law claim.  *See Johnson*, 360 F.3d at 819 (citing *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7).

The Court, therefore, declines to exercise supplemental jurisdiction over Steffen's remaining state-law claim and dismisses this claim without prejudice.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that Defendant St. Paul Eye Clinic, P.A.'s motion for summary judgment, (Dkt. 74), is **GRANTED IN PART AND DENIED IN PART** as addressed herein:

1.     Defendant St. Paul Eye Clinic, P.A.'s motion for summary judgment, (Dkt. 74), is **GRANTED** as to counts I–VII.

2.     Defendant St. Paul Eye Clinic, P.A.'s motion for summary judgment, (Dkt. 74), is **DENIED** as to count VIII.  Count VIII is dismissed without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  January 23, 2023                              s/Wilhelmina M. Wright___
                                                      Wilhelmina M. Wright
                                                      United States District Judge